IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| IN RE: | CASE NO. 22-52645-WLH |
| STANDING OVATION RENNOVATIONS, LLC, | CHAPTER: 7 |
| Debtors. | JUDGE: WENDY L. HAGENAU |
| NUBRIDGE COMMERCIAL LENDING LLC, | CONTESTED MATTER |
| Movant, | |
| v. | |
| STANDING OVATION RENNOVATIONS, LLC, Debtor, NEIL C. GORDON, Trustee, | |
| Respondent(s). | |

**MOVANT'S SUPPLEMENTAL BRIEF IN SUPPORT OF ITS
MOTION TO CONFIRM NO STAY IN PLACE,
TO ANNUL THE AUTOMATIC STAY NUNC PRO TUNC
AND DEEM FORECLOSURE SALE VALID, AND
REQUEST FOR A FINDING PURSUANT TO 11 USC SECTION 362(d)(4)(A)**

COMES NOW NuBridge Commercial Lending LLC (the "Movant") and files this

Supplemental Brief in Support of its Motion to Confirm No Stay in Place, or in the alternative to

Annul the Automatic Stay Nunc Pro Tunc to Deem Foreclosure Sale Valid, or in the alternative

Relief from the Stay, and also Request for a Finding Pursuant to 11 USC §362(d)(4)(A), which

was filed in this case on April 11, 2022 (the "Motion") (Docket Entry #6). In addition to the

Statement of Facts, arguments, and citations to authority contained in its Motion, which are

incorporated herein by reference, Movant shows this Honorable Court as follows:

**I.      STATEMENT OF ADDITIONAL FACTS**

Dexter Hull, who caused Standing Ovation Rennovations, LLC (the "Debtor") to file the

instant bankruptcy case as it Managing Member, is highly involved with Alvarez Investement

Group LLC ("Alvarez"), and is or was Alvarez's Director of Operations. See attached Exhibits E

and F. Dexter Hull, on behalf of Alvarez, had requested an extension of the maturity date of the

loan between Alvarez and Movant (the "Loan"), but subsequently cancelled the extension request

because Alvarez was purportedly expecting to receive financing from another source to pay off

the debt owed to Movant. See attached Exhibit F. Alvarez did not pay off the Loan by the maturity

date.

Movant sent a Notice of Maturity Default to Alvarez on December 2, 2021. See attached

Exhibit G. Movant sent a Notice of Foreclosure and Notice of Sale Under Power to Alvarez on

February 28, 2022, which listed the direct contact information, including direct phone number and

email address, for Charles B. ("Chuck") Waters, Jr., who is a Supervising Partner with Movant's

counsel. See attached Exhibit H. Mr. Waters' contact information is also publicly available on

Movant's counsel's website. The Debtor's own Schedules list Mr. Waters as a noticing party for

Movant. The bankruptcy was filed at 2:30 a.m. on April 5, 2022, mere hours before the foreclosure

sale. The Debtor was clearly aware of the foreclosure sale and who the attorney representing

Movant in the foreclosure was.

Movant's counsel has reviewed its call records and confirmed it received calls from Ravena

Lottie's, counsel for Debtor, telephone number at 9:30 a.m. and 9:39 a.m. the morning of April 5,

2022. The call center staff taking those two calls were unable to locate a matter relating to the

property located at 3751 Martin Luther King Jr. Dr. SW, Atlanta, GA 30331 (the "Property") and

advised Ms. Lottie as such. Despite having actual knowledge of the identity of the attorney

overseeing the foreclosure, as evidenced by Debtor's Counsel's inclusion of him as a party to be

notified with respect to the Movant's account, Counsel for Debtor did not email Movant's counsel

about the bankruptcy and the purported transfer of interest in the Property from Alvarez to the Debtor until April 8, 2022. Movant had no knowledge of the instant bankruptcy case nor of the unauthorized attempted transfer until April 8, 2022.

**II.    ADDITIONAL ARGUMENTATION IN SUPPORT OF MOVANT'S MOTION:**

**A.  CAUSE EXISTS TO ANNUL THE AUTOMATIC STAY *NUNC PRO TUNC* BECAUSE THE DEBTOR FILED THIS CASE IN BAD FAITH**

The Debtor filed this case in bad faith, because the Debtor has no purpose to file bankruptcy other than to hinder the foreclosure of the Property. It is well established that filing a bankruptcy petition for the purpose of inhibiting a foreclosure without the intent to pursue financial rehabilitation constitutes bad faith. The court in <u>In re Herrera</u> held that, "'Filing a bankruptcy petition to prevent foreclosure if undertaken pursuant to a legitimate effort at reorganization is not reprehensible and is in accord with the aim of the Bankruptcy Code.' <u>In re Herrera</u> 194 B.R. 178, 187-188 (Bankr. N.D. Ill. 1996), quoting <u>In re Chisum</u> 847 F.2d at 598-99 (9th Cir. 1988). "However, when a case has been filed only for the purpose of inhibiting or forestalling a foreclosure action on the debtor's assets without the intention of financial rehabilitation, the case should be dismissed as having been filed in bad faith." <u>Id</u>. The Eleventh Circuit has also held in <u>Albany Partners, Ltd. v. Westbrook</u> that, "In finding a lack of good faith, courts have emphasized an intent to abuse the judicial process and the purposes of the reorganization provisions. Particularly when there is no realistic possibility of an effective reorganization and it is evident that the debtor seeks merely to delay or frustrate the legitimate efforts of secured creditors to enforce their rights, dismissal of the petition for lack of good faith is appropriate." <u>Albany Partners, Ltd. v. Westbrook</u>, 749 F.2d 670, 674 (11th Cir. 1984)

In <u>Albany Partners, Ltd. v. Westbrook</u>, the borrower defaulted on a commercial mortgage, transferred its interest in the subject property to a third party entity which was not a party to the

mortgage over one year before the foreclosure, and this third party entity ("Albany Partners") filed a bankruptcy under Chapter 11 claiming an interest in the subject property on the day before the property was to be sold at non-judicial foreclosure. The two general partners of Albany Partners were also two of the three general partners of the borrower. Having not seen the warranty deed until long after the foreclosure and bankruptcy petition, the lender had no knowledge of the transfer of the property, and concluded its foreclosure sale even while having actual knowledge of the bankruptcy filed by Albany Partners. The court found that the case was filed in bad faith, because it was clear that Albany Partners, who was closely tied to the borrower, had filed the case merely for the purpose of hindering the foreclosure and did not intend to pursue an effective reorganization. Accordingly, the court annulled the stay retroactively and deemed the foreclosure sale valid, despite the lender's actual knowledge of the bankruptcy case when the foreclosure was conducted.

In the instant case, the Debtor, who is not a party to the Loan, purports to have received an interest in the Property from Alvarez, the borrower, via a quitclaim deed dated April 1, 2022, which was mere days before the foreclosure on April 5, 2022. The quitclaim deed shows the Debtor paid only $1.00 of consideration to Alvarez. The Debtor's Managing Member, Dexter Hull, is closely involved with Alvarez as its Director of Operations. The Debtor filed the case on the eve of foreclosure. The Debtor did not file a reorganization-style bankruptcy, but rather filed a liquidation-style Chapter 7 case despite having no unsecured creditors and without being eligible for a Chapter 7 discharge. The Debtor has no bankruptcy purpose to have filed this case. It is clear that the only purpose for which the Debtor filed this bankruptcy was to hinder the foreclosure.

Movant had no knowledge of the bankruptcy case until April 8, 2022, after the foreclosure had been concluded. Movant also had no knowledge of the attempted transfer until April 8, 2022.

In fact, it was not until April 11, 2022 that Movant was able to obtain a copy of the quitclaim deed itself from the County. Debtor's counsel did not produce a copy of the actual quitclaim deed until the same day. Movant did not even have constructive notice of the attempted transfer upon the recordation of the quitclaim deed, because the deed was not attested by two witnesses as required under Georgia law, and, "Under Georgia law, a recordation on insufficient attestation is equivalent to no recordation at all and the recording of an improperly attested deed is a mere nullity." In re Fleeman, 81 B.R. 160, 162 (Bankr. M.D. Ga. 1987). "Recordation of an improperly attested deed to secure debt does not provide constructive notice of the contents or existence of the deed." Id. "Georgia law has long provided that a deed with a patent defect with respect to attestation does not provide constructive notice to a bona fide purchaser." In re Hagler, Case No. 07-65231 (Bankr. N.D. Ga. Dec. 10, 2009).

In consideration of the foregoing, retroactive annulment of the automatic stay is highly appropriate in this case, because it is clear this case was filed for no other purpose than to hinder the foreclosure of the Property, and so the case was filed in bad faith. The timing of the attempted transfer from Alvarez to the Debtor mere days before the foreclosure, the lack of any real consideration for the attempted transfer, the close involvement of Dexter Hull in the business of both the Debtor and Alvarez, the timing of the bankruptcy filing mere hours before the foreclosure, and the Debtor's lack of any legitimate bankruptcy purpose are all indications of a lack of good faith and an abuse of the judicial system, as the Eleventh Circuit found in Albany Partners, Ltd. v. Westbrook. Moreover, the court in Albany Partners, Ltd. v. Westbrook annulled the automatic stay retroactively and upheld the foreclosure despite the lender's actual knowledge of the bankruptcy at the time of the foreclosure. Here, Movant had no knowledge of the bankruptcy or of a possible transfer of interest in the Property until three days *after* the foreclosure. Debtor's counsel herself

was not able to produce a copy of the quitclaim deed until April 11, 2022, which suggests she had

not even seen actual evidence of the transfer when she filed the instant Bankruptcy Petition. If

retroactive annulment of the automatic stay in order to uphold the foreclosure was appropriate in

Albany Partners, Ltd. v. Westbrook, it is even more appropriate in the instant case.

### B.  THE DEBTOR DOES NOT HAVE STANDING TO ASSERT CLAIMS OR DEFENSES ARISING OUT OF THE LOAN DOCUMENTS, NOR TO ENFORCE ANY PROVISIONS OF THE LOAN AGAINST MOVANT

At the initial Expedited Hearing on Movant's Motion, which was held on April 13, 2022,

Debtor's counsel alleged that Movant had not made certain reimbursements and/or advancements

to Alvarez under the Loan. Movant asserts that, while it did perform all of its obligations under

the Loan, this issue is irrelevant and immaterial to this case, because Movant has no obligations to

the Debtor under the Loan, as the Debtor is not a party to the Loan, the Debtor is not mentioned

anywhere in the Loan, and the Debtor is not an intended beneficiary of the loan. Therefore, the

Debtor does not have the legal standing to assert a claim or defense arising out of the Loan against

Movant, nor to enforce any provision of the Loan against Movant. Under Georgia law, "an action

on a contract… shall be brought in the name of the party in whom the legal interest in the contract

is vested." O.C.G.A. § 9-2-20. The Debtor is not a named party on the Loan. Georgia law does

allow, "[t]he beneficiary of a contract made between other parties for his benefit [to] maintain an

action against the promisor on the contract." Id. However, as the Eleventh Circuit held, "Georgia

law differentiates between intended beneficiaries and incidental beneficiaries. *See Lee v. Am. Cent.

Ins. Co.,* 241 Ga.App. 650, 530 S.E.2d 727, 730 (Ga.Ct.App.1999) (holding that for a third party

to bring a claim 'it must clearly appear from the contract that it was intended for his benefit')".

Auto Owners Ins. Co. v. Sw. Nut Co., Inc., 13-11672, 2014 WL 1797001 (11th Cir. May 7, 2014).

The Court of Appeals of Georgia has also held that, "[I]n order for a third party to have standing

to enforce a contract under OCGA § 9–2–20(b), it must clearly appear from the contract that it was intended for his benefit. The mere fact that he would benefit incidentally from performance of the agreement is not alone sufficient. There must be a promise by the promisor to the promisee to render some performance to a third person, and it must appear that both the promisor and the promisee intended that the third person should be the beneficiary. U.S. Bank, N.A. v. Otis Wayne Phillips, 734 S.E.2d 799, 801 (Ga. Ct. App. 2012). So, in order for a third party to bring an action on a contract it must be an intended beneficiary, and an intended beneficiary is one for which some performance has been clearly promised in the contract. Upon review of the Loan documents executed by Movant and Alvarez, the Debtor is not mentioned anywhere therein, and Movant did not promise performance to *any* person or entity other than the named borrower, Alvarez. See the attachments to Movant's Motion labeled as Exhibit A and Exhibit B. It is clear from the face of the Loan documents that the Debtor was not an intended beneficiary of the Loan. The Debtor also was not a party to the Loan. Therefore, Movant has no obligations to the Debtor under the Loan, and the Debtor does not have legal standing under Georgia law to assert any claim or defense arising out of the Loan against Movant, nor to enforce any provisions of the Loan against Movant. This speaks even more to Debtor's bad faith in filing this case, because the Debtor is attempting to obtain relief through Bankruptcy Court (invalidating a properly performed non-judicial foreclosure) what the Debtor has no legal standing to obtain in State Court.

Wherefore Movant respectfully requests that this Court consider the foregoing, and award Movant the relief sought in its Motion.

Evan Durkovic, Bar No.: 948332
Attorney for Movant
Aldridge Pite, LLP

Fifteen Piedmont Center
3575 Piedmont Road, N.E., Suite 500
Atlanta, GA 30305
Phone: (404) 994-7400
Fax: (619) 590-1385
Email: edurkovic@aldridgepite.com

IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

IN RE:

STANDING OVATION RENNOVATIONS,
LLC

                    Debtor.

CASE NO. 22-52645-WLH

CHAPTER:  7

### CERTIFICATE OF SERVICE

I hereby certify that on the 15th day of April, 2022, I electronically filed the foregoing *Supplemental Brief in Support of its Motion to Confirm No Stay in Place, To Annul the Automatic Stay Nunc Pro Tunc and Deem Foreclosure Sale Valid, and Request for A Finding Pursuant to 11 USC Section 362(d)(4)(A),* Docket Entry # 16, with the Clerk of Court using the CM/ECF system which will automatically send an e-mail notification of such filing to the parties or attorneys of record.

**The following parties have been served via e-mail**:

Ravena B Lottie, Esq                          Neil C. Gordon
rblottie@gmail.com                            neil.gordon@agg.com
rbolottie@baskervillelottielaw.com            angela.ford@agg.com

Thomas Wayne Dworschak
thomas.w.dworschak@usdoj.gov

I have also on this day caused a copy of the pleading to be placed in the first-class United States mail, postage prepaid, addressed to the following recipients not participating in the CM/ECF system as follows:

**The following parties have been served via U.S. First Class Mail**:

Standing Ovation Rennovations, LLC
4483 Lionshead Circle
Lithonia, GA 30038

**I CERTIFY UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE
AND CORRECT.**

/s/ Evan Durkovic
Evan Durkovic, Bar No.: 948332
Attorney for Creditor
Aldridge Pite, LLP
Fifteen Piedmont Center
3575 Piedmont Road, N.E., Suite 500
Atlanta, GA 30305
Phone: (404) 994-7400
Fax: (619) 590-1385
Email: edurkovic@aldridgepite.com

**Jorge Ramos**

**From:**        Joanna Alvarez <alvarezinvestmentgroup@gmail.com>
**Sent:**        Wednesday, January 13, 2021 6:22 AM
**To:**          Jorge Ramos
**Subject:**     [External]  Authorization

Dear Jorge:

Mr. Dexter Hull is our Director of Operations, please let this letter serve as authorization for you to deal with him regarding the loan account for Metropolitan Gardens. His email address is Dexter2bros@gmail.com and his telephone number is 770-283-0099. Thank you for your cooperation in this matter

Thank you

Joanna Burnley

1

EXHIBIT E

| | |
|---|---|
| **From:** | Jesus Perez |
| **To:** | dexter2bros |
| **Cc:** | "Joanna Alvarez" |
| **Subject:** | Payment reminder/Extension Update- November 2021/ 1000584 |
| **Date:** | Tuesday, November 9, 2021 9:41:00 AM |
| **Attachments:** | image001.png |
| | 1000584 - Mortgage Statement - Alvarez Investement Group LLC_Due Date_11-01-2021.pdf |
| | Wire instructions Nubridge for Alavarez loan _(002).pdf |

Dexter,

Per our conversation, please wire in the November payment of $55,736.75. I attached the wire instructions for the payment here. Also, can you verify that your request for an extension is now cancelled, and you will be paying off our loan?

Please provide the estimated closing date and who will be the lender paying us off and when will they contact us for a payoff demand.

We should have our inspection report and valuation update any day and we will review for the repair disbursement.

Thank you,

**Jesus E. Perez**
Loan Servicing Manager
NuBridge Commercial Lending LLC
21680 Gateway Center Drive #230
Diamond Bar, CA 91765
**Office/Fax** 909.413.4517**| Mobile** 909.297.8499



jperez@nubridge.com **|** www.nubridge.com

EXHIBIT F



**NuBridge** Commercial Lending
21680 Gateway Center Drive #230
Diamond Bar, CA 91765
(800) 833-4714

*Sent by email*
*to alvarezinvestmentgroup@gmail.com*
*and by FedEx 7753 7860 4358*

December 2, 2021

Ms. Joanna A. Burnley
CEO and Sole Member
Alvarez Investements Group LLC
640 Pine Ridge Trail SE
Conyers, GA 30094

Account: 1000584

**NOTICE OF MATURITY DEFAULT**

Dear Ms. Burnley,

The loan made by NuBridge Commercial Lending LLC to Alvarez Investements Group LLC matured on December 1, 2021 and the entire indebtedness became due and payable on that day. The loan remains unpaid and is now in default. As a result, a late charge of 5.00% on the entire loan amount has been incurred. In addition, the unpaid amounts are now accruing interest at the default rate of 14.99%.

We urge you to expedite the process with your take-out lender to avoid further accrual of default interest, expenses, charges and penalties.

Time is of the essence.

Sincerely,

Jorge Ramos
Executive Vice President, Loan Servicing
jramos@NuBridge.com

EXHIBIT G

# ALDRIDGE | PITE
### LLP

Charles B. Waters, Jr.*
Supervising Partner,
Commercial Finance
Direct Dial: 404.994.7426
cwaters@aldridgepite.com

Fifteen Piedmont Center
3575 Piedmont Road NE
Suite 500
Atlanta, GA 30305
www.aldridgepite.com

*Licensed in Georgia

February 28, 2022

## VIA FEDEX OVERNIGHT DELIVERY AND
## VIA CERTIFIED MAIL, RETURN RECEIPT REQUESTED

Alvarez Investement Group LLC
640 Pine Ridge Trail SE
Conyers, Georgia 30094

Joanna A. Burnley ("**Guarantor**")
640 Pine Ridge Trail SE
Conyers, Georgia 30094

## NOTICE OF FORECLOSURE

RE:    $9,637,500.00 loan (the "**Loan**") evidenced by that certain Promissory Note (the "**Note**") dated as of December 2, 2020, executed by Alvarez Investement Group LLC, a Georgia limited liability company ("**Borrower**") in favor of NuBridge Commercial Lending LLC, a Delaware limited liability company ("**Lender**"), which Note is secured by, *inter alia*, that certain Deed to Secure Debt, Assignment of Leases and  Rents, Security Agreement and Fixture Filing dated December 2, 2020, executed by Borrower in favor of Lender, filed December 7, 2020, and recorded in Deed Book  62744, Page 478, Fulton County, Georgia Records (the "**Security Deed**")

Account No.: 1000584
Metropolitan Gardens Apartments, 3751 Martin Luther King Jr. Drive SW, Atlanta, Georgia 30331 (the "**Property**")

Dear Borrower and Guarantor:

Please be advised that the undersigned and this law firm continue to represent Lender in connection with the above-referenced Loan. Our firm has been retained to collect the Note and to enforce the appropriate remedies contained therein and in the Security Deed and in any other documents evidencing, guaranteeing, securing or related to the Note (collectively the "**Loan Documents**").  All terms not otherwise defined herein shall have the meanings ascribed thereto in the Loan Documents.

This letter constitutes formal notice pursuant to O.C.G.A. § 44-14-162.2 that Lender has initiated foreclosure proceedings against the Property.  Enclosed is a copy of the Notice of Sale submitted for publication in the legal newspaper in Fulton County, Georgia in which the Property is located.  The sale is currently scheduled for **April 5, 2022,** and will be held at the time and place and in the usual manner of the sheriff's sales in Fulton County on that date.

You have been notified that, pursuant to O.C.G.A. § 13-1-1, the provisions in the Loan Documents relative to payment of attorney's fees in addition to the principal and interest shall be enforced.

Alabama | Alaska | Arizona | California | Florida | Georgia | Hawaii | Idaho | Nevada
New Mexico | New York | Oregon | Tennessee | Texas | Utah | Washington

# EXHIBIT H

Alvarez Investement Group LLC
Joanna A. Burnley
February 28, 2022
Page 2

Finally, notwithstanding any previous action or inaction by or on behalf of Lender or Servicer to the contrary, if any, you are hereby notified, pursuant to O.C.G.A. § 13-4-4, that Lender will hereafter require strict compliance with the terms and conditions of the Note and other Loan Documents, and Lender does not in any manner waive any rights or remedies available against you pursuant to the Note or other Loan Documents or applicable law, including without limitation the rights described in this letter.

Pursuant to O.C.G.A. § 44-14-162.2, you are hereby notified that the entity or individual with full authority to negotiate, amend, and modify the terms of the mortgage is Jorge Ramos with NuBridge Commercial Lending LLC, 21680 Gateway Center Drive, Suite 230, Diamond Bar, California 91765, phone number (909) 498-4798 or email jramos@nubridge.com.

If you have any questions regarding this letter, you may contact me at (404) 994-7426.

Very truly yours,

**ALDRIDGE PITE, LLP**

Charles B. Waters, Jr.

Enclosure, as stated

cc:    All recipients, via regular, first-class mail
       (with enclosure)

cc:    Jorge Ramos (via email)

**EXHIBIT H**

## NOTICE OF SALE UNDER POWER

STATE OF GEORGIA

COUNTY OF FULTON

Under and by virtue the Power of Sale contained in that certain Deed to Secure Debt, Assignment of Leases and Rents, Security Agreement and Fixture Filing (the "Security Deed") from Alvarez Investement Group LLC, a Georgia limited liability company ("Grantor" or "Borrower") to NuBridge Commercial Lending LLC, a Delaware limited liability company ("Grantee" or "Lender"), dated December 2, 2020, filed December 7, 2020, and recorded at Deed Book 62744, Page 478, Fulton County, Georgia records, Grantee, as attorney-in-fact for Grantor, will sell at public outcry to the highest and best bidder for cash, at the usual place for conducting sales at the courthouse in Fulton County, Georgia, during the legal hours of sale, on the first Tuesday in April, 2022, the following described real property, to wit:

ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOT 15, DISTRICT 14FF, CITY OF ATLANTA, FULTON COUNTY, GEORGIA; AND BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS:

BEGINNING AT THE CONCRETE MONUMENT MARKING THE INTERSECTION OF THE NORTHEASTERLY RIGHT OF WAY OF MARTIN LUTHER KING JR. DRIVE {90' R/W) AND THE NORTHERLY RIGHT OF WAY OF BOLTON ROAD (R/W VARIES), WHICH IS THE POINT OF BEGINNING;

THENCE TRAVELING ALONG THE NORTHEASTERLY RIGHT OF WAY OF MARTIN LUTHER KING JR. DRIVE NORTH 32 DEGREES 11 MINUTES 47 SECONDS WEST A DISTANCE OF 164.45 FEET TO A CONCRETE MONUMENT FOUND; THENCE CONTINUING ALONG SAID RIGHT OF WAY ALONG A CURVE TO THE RIGHT WITH AN ARC DISTANCE OF 3.84 FEET AND A RADIUS OF 3100.77 FEET, BEING SUBTENDED BY A CHORD OF NORTH 32 DEGREES 13 MINUTES 47 SECONDS A DISTANCE OF 3.84 FEET TO A 1/2" REBAR FOUND; THENCE LEAVING SAID RIGHT OF WAY NORTH 81

EXHIBIT H

DEGREES 31 MINUTES 33 SECONDS EAST A DISTANCE OF 271.50 FEET TO AN OPEN-TOP PIPE FOUND; THENCE RUNNING NORTH 01 DEGREES 11 MINUTES 37 SECONDS EAST A DISTANCE OF 356.89 FEET TO A 1/2" REBAR FOUND; THENCE SOUTH 88 DEGREES 32 MINUTES 24 SECONDS WEST A DISTANCE OF 269.20 FEET TO A 1/2" REBAR FOUND; THENCE NORTH 01 DEGREES 28 MINUTES 00 SECONDS WEST A DISTANCE OF 172.06 FEET TO A POINT; THENCE SOUTH 89 DEGREES 41 MINUTES 00 SECONDS EAST A DISTANCE OF 82.38 FEET TO AN OPEN-TOP PIPE FOUND; THENCE SOUTH 30 DEGREES 55 MINUTES 41 SECONDS EAST A DISTANCE OF 70.63 FEET TO AN OPEN-TOP PIPE FOUND; THENCE SOUTH 89 DEGREES 13 MINUTES 51 SECONDS EAST A DISTANCE OF 340.84 FEET TO A POINT; THENCE SOUTH 07 DEGREES 47 MINUTES 17 SECONDS WEST A DISTANCE OF 45.93 FEET TO A POINT; THENCE SOUTH 06 DEGREES 49 MINUTES 25 SECONDS WEST A DISTANCE OF 147.88 FEET TO A CRIMPED-TOP PIPE FOUND; THENCE SOUTH 76 DEGREES 16 MINUTES 56 SECONDS EAST A DISTANCE OF 268.81 FEET TO A POINT ON THE WESTERLY RIGHT OF WAY OF BOLTON ROAD; THENCE RUNNING ALONG THE WESTERLY AND NORTHERLY RIGHT OF WAY OF BOLTON ROAD THE FOLLOWING FIVE (5) COURSES AND DISTANCES: THENCE ALONG A CURVE TO THE RIGHT WITH AN ARC DISTANCE OF 217.74 FEET AND A RADIUS OF 762.00 FEET, BEING SUBTENDED BY A CHORD OF SOUTH 18 DEGREES 30 MINUTES 49 SECONDS WEST A DISTANCE OF 217.00 FEET TO A POINT; THENCE SOUTH 25 DEGREES 58 MINUTES 47 SECONDS WEST A DISTANCE OF 82.15 FEET TO A CONCRETE MONUMENT FOUND; THENCE NORTH 62 DEGREES 55 MINUTES 43 SECONDS WEST A DISTANCE OF 29.99 FEET TO A 1/2" REBAR FOUND; THENCE SOUTH 26 DEGREES 52 MINUTES 47 SECONDS WEST A DISTANCE OF 97.40 FEET TO A 1/2" REBAR FOUND; THENCE SOUTH 86 DEGREES 04 MINUTES 30 SECONDS WEST A DISTANCE OF 435.09 FEET TO THE TRUE POINT OF BEGINNING.

SAID TRACT OR PARCEL OF LAND CONTAINS 5.818 ACRES AND IS DEPICTED ON
THAT CERTAIN ALTA/ACSM PLAT OF SURVEY PREPARED BY LANDPRO SURVEYING AND MAPPING, INC., SEALED AND CERTIFIED BY JAMES H. RADER, GRLS NO. 3033, DATED NOVEMBER 20, 2014.

**ADDRESS: 3751 MARTIN LUTHER KING, JR. DRIVE SW, ATLANTA, GEORGIA 30331**

EXHIBIT H

The debt secured by the Security Deed is evidenced by that certain Promissory Note from Borrower to Lender, dated as of December 2, 2020, in the original principal amount of $9,637,500.00, as may have been amended, replaced, restated or modified (the "Note") plus interest on the unpaid balance until paid, and other indebtedness.

Default has occurred and continues under the terms of the Note and Security Deed by reason of, among other possible events of default, the nonpayment when due of the indebtedness evidenced by the Note and secured by the Security Deed and the failure to comply with the terms and conditions of the Note and Security Deed. By reason of this default, the Security Deed has been declared foreclosable according to its terms.

The above-described real property will be sold to the highest and best bidder for cash, the proceeds to be applied to the payment of said indebtedness, attorney's fees, and the lawful expenses of said sale, all as provided in the Note and Security Deed. The sale shall be subject to the following: all outstanding ad valorem taxes and/ or assessments, if any; possible redemptive rights of the Internal Revenue Service, if any; and all other prior assessments, easements, restrictions or matter of record.

To the best of the undersigned's knowledge and belief, the party in possession of the real property is Alvarez Investement Group LLC, a Georgia limited liability company, and/or tenants claiming under Alvarez Investement Group, a Georgia limited liability company.

NuBridge Commercial Lending LLC,
a Delaware limited liability company,
as Agent and Attorney-in-Fact for
Alvarez Investement Group LLC, a
Georgia limited liability company

Charles B. Waters, Jr.
Aldridge Pite, LLP
Fifteen Piedmont Center
3575 Piedmont Road, N.E., Suite 500

EXHIBIT H

Atlanta, Georgia 30305
(404) 994-7426
File Number 2112-002A

THIS LAW FIRM IS ACTING AS A DEBT COLLECTOR AND IS ATTEMPTING TO
COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT
PURPOSE.

EXHIBIT H

FIRST-CLASS MAIL

neopost℠
02/26/2022
US POSTAGE $000.73⁰

ZIP 30305
041L12205684

ALDRIDGE | PITE
LLP

Fifteen Piedmont Center
3575 Piedmont Road, N.E.
Suite 500
Atlanta, GA 30305

Alvarez Investement Group LLC
640 Pine Ridge Trail SE
Conyers, Georgia 30094

EXHIBIT H

neopost℠
02/28/2022
US POSTAGE $000.73

FIRST-CLASS MAIL

ZIP 30305
041L12205034

EXHIBIT H

ALDRIDGE | PITE LLP

Fifteen Piedmont Center
3575 Piedmont Road, N.E.
Suite 500
Atlanta, GA 30305

Joanna A. Burnley
640 Pine Ridge Trail SE
Conyers, Georgia 30094

CERTIFIED MAIL®

9414 7266 9904 2137 3960 37

Joanna A. Burnley
640 Pine Ridge Trail SE
Conyers, Georgia 30094

**ALDRIDGE | PITE** LLP

Fifteen Piedmont Center
3575 Piedmont Road, N.E.
Suite 500
Atlanta, GA 30305

EXHIBIT H

Thank you for using Return Receipt Service

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X
☐ Agent
☐ Addressee

B. Received by (Printed Name)   C. Date of Delivery

D. Is delivery address different from Item 1?   ☐ Yes
If YES, enter delivery address below:   ☐ No

3. Service Type:
☒ Certified Mail
☐ Certified Mail Restricted Delivery
Reference Information

Domestic Return Receipt

Return Receipt (Form 3811) Barcode

9590 9266 9904 2137 3960 30

1. Article Addressed to:
Joanna A. Burnley
640 Pine Ridge Trail SE
Conyers, Georgia 30094

2. Certified Mail (Form 3800) Article Number
9414 7266 9904 2137 3960 37

PS Form 3811, Facsimile, July 2015

RETURN RECEIPT REQUESTED
USPS®MAIL CARRIER
DETACH ALONG PERFORATION

C  FOLD AND TEAR THIS WAY

Thank you for using Return Receipt Service

**CERTIFIED MAIL®**

9414 7266 9904 2137 3960 99

FIRST-CLASS MAIL

$004.40

ZIP 30305
041L1220Y764

**ALDRIDGE | PITE** LLP

Fifteen Piedmont Center
3575 Piedmont Road, N.E.
Suite 500
Atlanta, GA 30305

Alvarez Investement Group LLC
640 Pine Ridge Trail SE
Conyers, Georgia 30094

---

**EXHIBIT H**

Thank You for using Return Receipt Service

SENDER: COMPLETE THIS SECTION

Return Receipt (Form 3811) Barcode

9590 9266 9904 2137 3960 92

1. Article Addressed to:

Alvarez Investement Group LLC
640 Pine Ridge Trail SE
Conyers, Georgia 30094

2. Certified Mail (Form 3800) Article Number

9414 7266 9904 2137 3960 99

PS Form 3811, Facsimile, July 2015

COMPLETE THIS SECTION ON DELIVERY

A. Signature
X                                          ☐ Agent
                                           ☐ Addressee

B. Received by (Printed Name)    C. Date of Delivery

D. Is delivery address different from Item 1?  ☐ Yes
   If YES, enter delivery address below:       ☐ No

3. Service Type:
   ☐ Certified Mail
   ☐ Certified Mail Restricted Delivery
                    Reference Information

Domestic Return Receipt

---

**C**  ← FOLD AND TEAR THIS WAY

RETURN RECEIPT REQUESTED
USPS® MAIL CARRIER
DETACH ALONG PERFORATION →

Thank you for using Return Receipt Service

EXHIBIT H



After printing this label:
1. Use the 'Print' button on this page to print your label to your laser or inkjet printer.
2. Fold the printed page along the horizontal line.
3. Place label in shipping pouch and affix it to your shipment so that the barcode portion of the label can be read and scanned.

Warning: Use only the printed original label for shipping. Using a photocopy of this label for shipping purposes is fraudulent and could result in additional billing charges, along with the cancellation of your FedEx account number.

Use of this system constitutes your agreement to the service conditions in the current FedEx Service Guide, available on fedex.com.FedEx will not be responsible for any claim in excess of $100 per package, whether the result of loss, damage, delay, non-delivery,misdelivery,or misinformation, unless you declare a higher value, pay an additional charge, document your actual loss and file a timely claim.Limitations found in the current FedEx Service Guide apply. Your right to recover from FedEx for any loss, including intrinsic value of the package, loss of sales, income interest, profit, attorney's fees, costs, and other forms of damage whether direct, incidental,consequential, or special is limited to the greater of $100 or the authorized declared value. Recovery cannot exceed actual documented loss.Maximum for items of extraordinary value is $1,000, e.g. jewelry, precious metals, negotiable instruments and other items listed in our ServiceGuide. Written claims must be filed within strict time limits, see current FedEx Service Guide.

ORIGIN ID:TMAA    (404) 994-7221
ATTN: MONIQUE D. TAYLOR
ALRIDGE PITE LLP
3575 PIEDMONT RD NE
BLDG 15, SUITE 500
ATLANTA, GA 30305
UNITED STATES US

TO  ALVAREZ INVESTEMENT GROUP LLC

640 PINE RIDGE TRAIL SE

CONYERS GA 30094
(404) 994-7221
INV: OTHER
PO: 2112002N009LL

REF: COMM FIN - M TAYLOR
DEPT: COMM. FINANCE

SHIP DATE: 28FEB22
ACT WGT: 0.50 LB
CAD: 10452A4299/INET4460

BILL SENDER

FedEx Express  E

56DU1/29A0/FE4A

TUE - 01 MAR 10:30A
PRIORITY OVERNIGHT

TRK# 7761 2428 7207
0201

37 MULA

30094
ATL
GA-US

EXHIBIT H



After printing this label:
1 - Use the 'Print' button on this page to print your label to your laser or inkjet printer.
2. Fold the printed page along the horizontal line.
3. Place label in shipping pouch and affix it to your shipment so that the barcode portion of the label can be read and scanned.

Warning: Use only the printed original label for shipping. Using a photocopy of this label for shipping purposes is fraudulent and could result in additional billing charges, along with the cancellation of your FedEx account number.
Use of this system constitutes your agreement to the service conditions in the current FedEx Service Guide, available on fedex.com. FedEx will not be responsible for any claim in excess of $100 per package, whether the result of loss, damage, delay, non-delivery, misdelivery, or misinformation, unless you declare a higher value, pay an additional charge, document your actual loss and file a timely claim. Limitations found in the current FedEx Service Guide apply. Your right to recover from FedEx for any loss, including intrinsic value of the package, loss of sales, income interest, profit, attorney's fees, costs, and other forms of damage whether direct, incidental, consequential, or special is limited to the greater of $100 or the authorized declared value. Recovery cannot exceed actual documented loss. Maximum for items of extraordinary value is $1,000, e.g. jewelry, precious metals, negotiable instruments and other items listed in our ServiceGuide. Written claims must be filed within strict time limits, see current FedEx Service Guide.