Case 22-52645-wlh    Doc 42    Filed 05/25/22    Entered 05/25/22 10:59:44    Desc Main
Document    Page 1 of 23

**Exhibit A**
**Declaration of Closing Attorney**

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| **In re:** | **Chapter 7** |
| **STANDING OVATION RENOVATIONS, LLC,** | **Case No. 22-52645-WLH** |
| **Debtor.** | |

## DECLARATION OF CLOSING ATTORNEY

I, Leonard Medley, Closing Attorney, make the following declaration:

1. I am over the age of 18 and I am a resident of the State of Georgia, I suffer no legal disabilities, and if called as a witness, I could testify completely to the facts set forth herein. Indeed, I will appear as a witness at Judge Hagenau's May 26, 2022 hearing on the Motion (defined below).

2. I submit this Declaration in support of the Debtor's Emergency Motion to Suspend or Dismiss Bankruptcy Case (the "**Motion**"),[1] and for all other purposes allowed by law. I will appear as a witness at Judge Hagenau's May 26, 2022 hearing on the Motion.

3. I am the closing attorney retained in connection with the closing of the sale of the Property.

4. The purchase price is $17 million. The Purchaser has already funded $5 million, which is escrowed in my IOLTA account. The remaining $12 million has been funded by the Purchaser's lender, Legacy Lending, LLC and is in the process of being wired to my IOLTA account.

5. There are no other impediments to the closing the sale of the Property, and it can close immediately upon Court suspension or dismissal of this bankruptcy case.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: May 25, 2022

**Leonard Medley, Esq.**
**CLOSING ATTORNEY**

---

[1] All undefined, capitalized terms contained herein shall have the meaning ascribed to them in the Motion.

▼ **HELLOSIGN**                                                    Audit Trail

| | |
|---|---|
| **TITLE** | Leonard Medley Declaration.pdf |
| **FILE NAME** | Leonard%20Medley%20Declaration.pdf |
| **DOCUMENT ID** | acacd84134daba47cb4cceb826a22a03939c1b0d |
| **AUDIT TRAIL DATE FORMAT** | MM / DD / YYYY |
| **STATUS** | ● Signed |

**This document was requested from app.clio.com**

## Document History

| | | |
|---|---|---|
| ↱ SENT | **05 / 25 / 2022** 14:07:07 UTC | Sent for signature to Standing Ovation Rennovations, LLC (leonard@mkalaw.com) from swenger@randllaw.com IP: 24.99.79.244 |
| 👁 VIEWED | **05 / 25 / 2022** 14:12:01 UTC | Viewed by Standing Ovation Rennovations, LLC (leonard@mkalaw.com) IP: 174.209.204.63 |
| ✒ SIGNED | **05 / 25 / 2022** 14:12:56 UTC | Signed by Standing Ovation Rennovations, LLC (leonard@mkalaw.com) IP: 174.209.204.63 |
| ✓ COMPLETED | **05 / 25 / 2022** 14:12:56 UTC | The document has been completed. |

**Exhibit B**
**Purchase and Sale Agreement and Amendment**

# COMMERCIAL PURCHASE AND SALE AGREEMENT

**Offer Date:** _JANUARY 17, 2022_



**2022 Printing**

### A. KEY TERMS AND CONDITIONS

1. **Purchase and Sale.** The undersigned buyer(s) ("Buyer") agree to buy and the undersigned seller(s) ("Seller") agree to sell the real property described below including all fixtures, improvements and landscaping therein ("Property") on the terms and conditions set forth in this Agreement.
   a. **Property Identification:** Address: __3751 MARTIN LUTHER KING JR DRIVE__
   City __ATLANTA__, County __FULTON__, Georgia, Zip Code __30331__
   MLS Number: _____ Tax Parcel I.D. Number: _____
   b. **Legal Description:** The legal description of the Property is attached as Exhibit A hereto.

2. **Purchase Price of Property to be Paid by Buyer.**
   $ __17,000,000.00__

3. **Closing Costs.**
   Seller's Contribution at Closing: $ __3%__

4. **Closing and Possession Date.** _ON OR BEFORE MARCH 17, 2022_

5. **Closing Law Firm.**
   Phone Number: __MEDLEY AND ASSOCIATES__

6. **Holder of Earnest Money/Escrow Agent.**

7. **Earnest Money.**
   a. Earnest Money shall be paid by ☐ check ☐ cash or ☐ wire transfer of immediately available funds as follows:
   ☐ i. $_____ as of the Offer Date.
   ☐ ii. $_____ within ____ days from the Binding Agreement Date.
   ☐ iii. _____
   b. Disputes regarding Earnest Money shall be resolved by a reasonable interpretation by ☐ Holder OR ☐ arbitration.

8. **Due Diligence Period.** Property is being sold subject to a Due Diligence Period of __15__ days from the Binding Agreement Date. Seller shall deliver Due Diligence Materials to Buyer within __5__ days from Binding Agreement Date.

9. **Title Examination.** Buyer shall have ____ days from the Binding Agreement Date in which to furnish written title objections to Seller.

10. **Existing Brokerage Commissions or Management Obligations.** If there are any brokerage commissions or management obligations due in connection with any leases or other agreements pertaining to the Property, then ☐ the existing brokerage commissions or management obligations will be paid by Seller at Closing, OR ☐ Buyer will assume existing lease commissions and/or management obligations.

11. **Assignment.** Buyer ☑ may OR ☐ may not assign this Agreement in accordance with the terms of this Agreement.

12. **Brokerage Relationships in this Transaction.**
   a. **Buyer's Broker is** _____ and is:
   (1) ☐ representing Buyer as a client.
   (2) ☐ working with Buyer as a customer.
   (3) ☐ acting as a dual agent representing Buyer and Seller.
   (4) ☐ acting as a designated agent where:
   _____ has been assigned to exclusively represent Buyer.
   b. **Seller's Broker is** _____ and is:
   (1) ☐ representing Seller as a client.
   (2) ☐ working with Seller as a customer.
   (3) ☐ acting as a dual agent representing Buyer and Seller.
   (4) ☐ acting as a designated agent where:
   _____ has been assigned to exclusively represent Seller.
   c. **Material Relationship Disclosure:** The material relationships required to be disclosed by either Broker are as follows:

13. **Time Limit of Offer.** The Offer set forth herein expires at __5:00__ o'clock __P__.m. on the date __01/23/2022__.

Buyer(s) Initials __CF__      Seller(s) Initials _____

THIS FORM IS COPYRIGHTED AND MAY ONLY BE USED IN REAL ESTATE TRANSACTIONS IN WHICH _Debra Hammond Hull_ IS INVOLVED AS A REAL ESTATE LICENSEE. UNAUTHORIZED USE OF THE FORM MAY RESULT IN LEGAL SANCTIONS BEING BROUGHT AGAINST THE USER AND SHOULD BE REPORTED TO THE GEORGIA ASSOCIATION OF REALTORS® AT (770) 451-1831.
Copyright© 2022 by Georgia Association of REALTORS®, Inc.        CF04, Commercial Purchase and Sale Agreement, Page 1 of 9, 01/01/22

**B. FURTHER EXPLANATIONS TO CORRESPONDING PARAGRAPHS IN SECTION A**

1. **Purchase and Sale.**
   a. **Warranty:** Seller warrants that at the time of closing Seller will convey good and marketable title to said Property by limited warranty deed subject only to: (1) zoning; (2) general utility, sewer, and drainage easements of record as of the Binding Agreement Date and upon which the improvements (other than any driveway or walkway) do not encroach; (3) declarations of condominium and declarations of covenants, conditions and restrictions of record on the Binding Agreement Date; and (4) leases and other encumbrances specified in this Agreement. Buyer agrees to assume Seller's responsibilities in any leases specified in this Agreement.
   b. **Examination:** Buyer may examine title and/or obtain a survey of the Property and furnish Seller with a written statement of title objections at or prior to the closing. If Seller fails or is unable to satisfy valid title objections at or prior to the closing or any unilateral extension thereof, which would prevent the Seller from conveying good and marketable title to the Property, then Buyer, among its other remedies, may terminate the Agreement without penalty upon written notice to Seller. Good and marketable title as used herein shall mean title which a title insurance company licensed to do business in Georgia will insure at its regular rates, subject only to standard exceptions.
   c. **Seller's Obligations at Closing.** At Closing, Seller shall deliver to Buyer: (a) a Closing Statement; (b) Limited Warranty Deed; (c) FIRPTA Affidavit (indicating that Seller is not a "foreign person" or "foreign corporation" as that term is defined in Section 1445(f)(3) of the Internal Revenue Code of 1986); (d) an Affidavit of Seller's Residence Regarding Georgia Withholding Tax, establishing that Seller is exempt from the requirements of O.C.G.A. § 48-7-128, the Georgia Withholding Statute (or Affidavit of Exemption or Affidavit of Seller's Gain, if withholding is required); (e) a transfer tax declaration form properly signed and executed by Seller; and, (f) all documents which Seller must execute under the terms of this Agreement to cause the Title Company to deliver to Buyer the Title Policy, including, without limitation, a title affidavit from Seller to Buyer and to the Title Company in the form customarily used in Georgia commercial real estate transactions so as to enable the Title Company to issue Buyer the Title Policy with all standard exceptions deleted and subject only to the Permitted Exceptions and evidence reasonably satisfactory to Title Company of its due and proper authority and power to perform its obligations hereunder. In addition, Seller shall deliver to Buyer at Closing all documents/items indicated in Exhibit "C", if any. (All documents to be delivered by Seller under this paragraph, including all documents/items indicated in Exhibit "C" are collectively "Seller's Closing Documents".)
   d. **Conditions to Closing.**
      i. **Conditions in Favor of Buyer:** The obligation of Buyer to consummate the transaction contemplated herein is conditioned upon the following conditions precedent as of the Closing Date:
         (a) All representations and warranties of Seller made herein shall remain true and correct;
         (b) Seller shall have performed all of the covenants undertaken by Seller in this Agreement to be performed by Seller at or prior to Closing;
         (c) Seller shall have delivered to the Buyer properly executed originals of Seller's Closing Documents;
         (d) There shall have been no material adverse change in the physical condition of Property, except as otherwise provided for in this Agreement; and
         (e) The issuance at Closing of the Title Policy (or marked binder), with all standard exceptions deleted and subject only to the Permitted Exceptions.
      ii. **Conditions in Favor of Seller:** The obligation of Seller to consummate the transaction contemplated herein is conditioned upon the following conditions precedent as of the Closing Date:
         (a) All representations and warranties of Buyer made herein shall remain true and correct;
         (b) Buyer shall have performed all of the covenants undertaken by Buyer in this Agreement to be performed by Buyer at or prior to Closing; and
         (c) Buyer shall have: (a) delivered to the Seller properly executed originals of the transfer tax declaration form, title policy documents, closing statement, and any other documents identified in Exhibit "C" that require Buyer's signature; and (b) paid the Purchase Price, plus or minus prorations and adjustments, to Seller.

2. **Purchase Price of Property to be Paid by Buyer.** The Purchase Price shall be paid in U.S. Dollars at Closing by wire transfer of immediately available funds, or such other form of payment acceptable to the Closing Attorney.

3. **Closing Costs.**
   a. **Seller's Costs:** Seller shall pay the amount of Seller's Monetary Contribution at Closing, if any, referenced in this Agreement, the cost of recording any title curative document, including, without limitation, satisfactions of deeds to secure debt, quitclaim deeds and financing statement terminations; all deed recording fees and the fees of Seller's counsel.
   b. **Buyer's Costs:** Buyer shall pay the cost of Buyer's counsel and consultants; all transfer taxes; any costs in connection with Buyer's inspection of Property and any costs associated with obtaining financing for the acquisition of Property (including any intangibles tax, all deed recording fees and the cost of recording Buyer's loan documents); and the cost of any title examination, survey of the Property obtained by Buyer and any owner's or lender's title insurance.
   c. **Taxes and Prorations.** Ad valorem property taxes, community association fees, solid waste and governmental fees and utility bills for which service cannot be terminated as of the date of closing; rents, tenant improvements costs and leasing commissions on Property for the calendar year in which the Closing takes place shall be prorated as of 12:01 a.m. on the Closing Date. In the event ad valorem property taxes are based upon an estimated tax bill or tax bill under appeal, Buyer and Seller shall, upon the issuance of the actual tax bill or the appeal being resolved, promptly make such financial adjustments between themselves as are necessary to correctly prorate the tax bill. In the event there are tax savings resulting from a tax appeal, third party costs to handle the appeal may be deducted from the savings for that tax year before re-prorating. Any pending tax appeal shall be deemed assigned to Buyer at closing.

4. **Closing and Possession Date.**

    a. **Right to Extend the Closing Date:** Buyer or Seller may unilaterally extend the closing date for eight (8) days upon notice to the other party given prior to or on the date of closing if: (1) Seller cannot satisfy valid title objections (excluding title objections that: (a) can be satisfied through the payment of money or by bonding off the same; and (b) do not prevent Seller from conveying good and marketable title, as that term is defined herein, to the Property); (2) Buyer's mortgage lender (even in "all cash" transactions where Buyer is obtaining a mortgage loan) or the closing attorney is delayed and cannot fulfill their respective obligations by the date of closing, provided that the delay is not caused by Buyer; or (3) Buyer has not received required estimates or disclosures and Buyer is prohibited from closing under federal regulations. The party unilaterally extending the closing date shall state the basis for the delay in the notice of extension. If the right to unilaterally extend the closing date is exercised once by either the Buyer or Seller, the right shall thereafter terminate.

    b. **Keys and Openers:** At Closing, Seller shall provide Buyer with all keys, door openers, codes and other similar equipment pertaining to the Property.

5. **Closing Law Firm.** Buyer shall have the right to select the closing attorney to close this transaction, and hereby selects the closing attorney referenced herein. In all cases where an individual closing attorney is named in this Agreement but the closing attorney is employed by or an owner, shareholder, or member in a law firm, the law firm shall be deemed to be the closing attorney. If Buyer's mortgage lender refuses to allow that closing attorney to close this transaction, Buyer shall select a different closing attorney acceptable to the mortgage lender. The closing attorney shall represent the mortgage lender in any transaction in which the Buyer obtains mortgage financing (including transactions where the method of payment referenced herein is "all cash"). In transactions where the Buyer does not obtain mortgage financing, the closing attorney shall represent the Buyer.

6. **Holder of Earnest Money/Escrow Agent.** The earnest money will be paid to Holder in a method of payment acceptable to the Holder. Holder has the right to charge Buyer for any cost associated with receiving earnest money. Such charge shall be collected separately from the payment of earnest money. The earnest money shall be deposited into Holder's escrow/trust account (with Holder being permitted to retain the interest if the account is interest bearing) not later than: (a) five (5) banking days after the Binding Agreement Date hereunder or (b) five (5) banking days after the date it is actually received if it is received after the Binding Agreement Date. If Buyer writes a check for earnest money and the same is deposited into Holder's escrow/trust account, Holder shall not return the earnest money until the check has cleared the account on which the check was written. In the event any earnest money check is dishonored by the bank upon which it is drawn, or earnest money is not timely paid, Holder shall promptly give notice of the same to Buyer and Seller. Buyer shall have three (3) banking days from the date of receiving the notice to cure the default and if Buyer does not do so, Seller may within seven (7) days thereafter terminate this Agreement upon notice to Buyer. If Seller fails to terminate the Agreement timely, Seller's right to terminate based on the default shall be waived.

7. **Earnest Money.**

    a. **Receipt:** In the event Buyer terminates this Agreement during the Due Diligence Period or does not otherwise close this transaction, Buyer shall promptly return all Due Diligence materials to Seller. The earnest money shall be deposited into Holder's escrow/trust account (with Holder being permitted to retain the interest if the account is interest bearing) not later than: (a) five (5) banking days after the Binding Agreement Date hereunder or (b) five (5) banking days after the date it is actually received if it is received after the Binding Agreement Date. If Buyer writes a check for earnest money and the same is deposited into Holder's escrow/trust account, Holder shall not be required to return the earnest money until the check has cleared the account on which the check was written. In the event any earnest money check is dishonored for any reason by the bank upon which it is drawn, Holder shall promptly give notice to Buyer and Seller. Buyer shall have 3 banking days after notice to deliver good funds to Holder. In the event Buyer does not timely deliver good funds, Seller shall have the right to terminate this Agreement upon written notice to Buyer.

    b. **Entitlement to Earnest Money:** Subject to the Disbursement of earnest money paragraph below:

        (1) Buyer shall be entitled to the earnest money upon: (a) failure of the parties to enter into a binding agreement; (b) failure of any contingency or condition to which this Agreement is subject; (c) termination of this Agreement due to the default of Seller; (d) the termination of this Agreement in accordance with a specific right to terminate set forth in the Agreement; or (e) upon the closing of Property.

        (2) Seller shall be entitled to the earnest money if this Agreement is terminated due to the default of Buyer. In such event, Holder may pay the earnest money to Seller by check, which if accepted and deposited by Seller, shall constitute liquidated damages in full settlement of all claims of Seller. It is agreed to by the parties that such liquidated damages are not a penalty and are a good faith estimate of Seller's actual damages, which damages are difficult to ascertain.

    c. **Disbursement of Earnest Money:** Holder shall disburse Earnest Money only as follows: (a) at Closing; (b) upon a subsequent written agreement signed by Buyer and Seller; (c) as set forth below in the event of a dispute regarding earnest money; or (d) the failure of the parties to enter into a binding agreement (where there is no dispute over the formation or enforceability of the Agreement). No party shall seek damages from Holder, nor shall Holder be liable for any such damages, for any matter arising out of or related to the performance of Holder's duties hereunder.

   **d.** **Disputes Regarding Earnest Money:** In the event Buyer or Seller notifies Holder of a dispute regarding the disposition of Earnest Money that Holder cannot resolve, Holder shall settle the dispute in accordance with method selected on the cover page of this Agreement.

      (1) **Reasonable Interpretation by Holder:** In the event earnest money disputes are to be resolved by Holder herein, Holder may disburse the earnest money upon a reasonable interpretation of the Agreement, provided that Holder first gives all parties 10 days notice stating to whom and why the disbursement will be made. Any party may object to the proposed disbursement by giving written notice of the same to Holder within the ten (10) day notice period. Objections not timely made in writing shall be deemed waived. If Holder receives an objection and after considering it, decides to disburse the earnest money as originally proposed, Holder may do so and send notice to the parties of Holder's action. If Holder decides to modify its proposed disbursement, Holder shall first send a new ten (10) day notice to the parties stating the rationale for the modification and to whom the disbursement will now be made. If there is a dispute over the earnest money which the parties cannot resolve after a reasonable period of time, and where Holder has a bona fide question as to who is entitled to the earnest money, Broker may interplead the earnest money into a court of competent jurisdiction. Holder shall be reimbursed for and may deduct from any funds interpleaded, its costs and expenses, including reasonable attorney's fees actually incurred. The prevailing defendant in the interpleader lawsuit shall be entitled to collect its attorney's fees and court costs and the amount deducted by Holder from the non-prevailing defendant.

      (2) **Arbitration:** In the event arbitration is selected as the method to resolve earnest money disputes, such disputes shall be resolved by arbitration in accordance with the Federal Arbitration Act 9 U.S.C. § 1 et. seq. and the rules and procedures of the arbitration company selected to administer the arbitration. Upon making or receiving a demand for arbitration, the parties shall work together in good faith to select a mutually acceptable arbitration company with offices in Georgia to administer and conduct the arbitration. If the parties cannot mutually agree on an arbitration company, the company shall be selected as follows. Each party shall simultaneously exchange with the other party a list of three arbitration companies with offices in Georgia acceptable to that party to administer and conduct the arbitration. If there is only one (1) arbitration company that is common to both lists, that company shall administer and conduct the arbitration. If there is more than one arbitration company that is common to both lists, the parties shall either mutually agree on which arbitration company shall be selected or flip a coin to select the arbitration company. If there is not initially a common arbitration company on the lists, the parties shall repeat the process by expanding their lists by two each time until there is a common name on the lists selected by the parties. The decision of the arbitrator shall be final and the arbitrator shall have authority to award attorneys' fees and allocate the costs of arbitration as part of any final award.

**8.** **Due Diligence.** Buyer has paid Seller the sum of $25, the receipt of which is hereby acknowledged by Seller, as option money for Buyer having the right to terminate this agreement during the Due Diligence Period. Prior to closing, Buyer and Buyer's agents shall have the right to enter upon Property at Buyer's expense, and at reasonable times, to inspect, survey, examine, and test Property as Buyer may deem necessary as part of Buyer's acquisition of Property. Buyer shall indemnify and hold Seller and all Brokers harmless from and against any and all claims, injuries, and damages to persons and/or property arising out of or related to the exercise of Buyer's rights hereunder. During the Due Diligence Period Buyer may evaluate Property, the feasibility of the transaction, the availability and cost of financing, and any other matter of concern to Buyer. During the Due Diligence Period, Buyer shall have the right to terminate this Agreement upon notice to Seller if Buyer determines, based on an evaluation of the above, that it is not desirable to proceed with the transaction. In such event, Holder shall promptly refund Buyer's earnest money in accordance with the earnest money paragraph below.

**9.** **Title Examination.**

   **a.** **Warranties of Seller:** Seller warrants that at Closing, Seller shall convey good and marketable, fee simple title to Property to Buyer by limited warranty deed, subject only to the following exemptions:

      (1) Liens for ad valorem taxes not yet due and payable;

      (2) Those exceptions to which Buyer does not object or which Buyer waives in accordance with the Title Objections paragraph below.

      (3) Those Permitted Exceptions attached hereto and incorporated herein as an exhibit to which Buyer has agreed not to object. For all purposes under this Agreement, "Good and marketable, fee simple title" with respect to Property shall be such title: (a) as is classified as "marketable" under the Title Standards of the State Bar of Georgia; and (b) as is acceptable and insurable by a title insurance company doing business in Georgia ("Title Company"), at standard rates on an American Land Title Association Owner's Policy ("Title Policy").

   **b.** **Title Objections:** Seller shall have until the Closing to cure all valid title objections ("Title Cure Period"). Seller shall satisfy any existing liens or monetary encumbrances identified by Buyer as title objections which may be satisfied by the payment of a sum certain prior to or at Closing. Except for Seller's obligations in the preceding sentence, if Seller fails to cure any other valid title objections of Buyer within the Title Cure Period (and fails to provide Buyer with evidence of Seller's cure satisfactory to Buyer and to the Title Company), Buyer may, as Buyer's sole remedies: (1) rescind the transaction contemplated hereby, in which case, Buyer shall be entitled to the return of Buyer's earnest money; (2) waive any such objections and elect to close the transaction contemplated hereby irrespective of such title objections and without reduction of the Purchase Price; or (3) extend the Closing Date for a period of time not to exceed fifteen (15) days to allow Seller further time to cure such valid title objections. Failure to act in a timely manner under this paragraph shall constitute a waiver of Buyer's rights hereunder. Buyer shall have the right to re-examine title prior to Closing and notify Seller at Closing of any title objections which appear of record after the date of Buyer's initial title examination and before Closing.

**10.** **Existing Brokerage Commissions or Management Obligations.** The Property may be subject to management, service or other contracts that affect the Property that cannot be terminated at Closing by Buyer. Seller agrees to provide Buyer with copies of any management, service or other contracts that affect the Property as part of the Due Diligence Materials to be delivered by Seller to Buyer.

11. **Assignment.** If Buyer does not have the right to assign this Agreement, then Buyer cannot assign this Agreement without the prior written permission of Seller. Any such approved assignment shall not release the original Buyer from any liabilities or obligations herein. Notice of such assignment shall be delivered to the Seller within 2 working days of execution, but not less than 5 days from closing. If Buyer has the right to assign this Agreement, then this Agreement may be assigned by the Buyer to any legal entity of which the Buyer or a principal or principals of Buyer own at least a 25% interest.

12. **Brokerage Relationships in this Transaction.**
    a. Seller has agreed to pay Listing Broker(s) a real estate commission pursuant to that certain brokerage engagement agreement entered into between the parties and incorporated herein by reference ("Listing Agreement"). Pursuant to the terms of the Listing Agreement, the Listing Broker has agreed to share that commission with the Selling Broker.

    The closing attorney is hereby authorized and directed to pay the Broker(s) at closing, their respective commissions out of the proceeds of the sale. If the sale proceeds are insufficient to pay the full commission, the party owing the commission shall pay any shortfall at closing. If more than one Broker is involved in the transaction, the closing attorney is directed to pay each Broker its respective portion of said commission. The acceptance by the Broker(s) of a partial real estate commission at the closing shall not relieve the Seller of the obligation to pay the remainder thereof after the closing unless the Broker(s) have expressly and in writing agreed to accept the lesser amount in full satisfaction of the Broker(s) claim to a commission.
    b. **Disclaimer:** Buyer and Seller have not relied upon any advice or representations of Brokers other than what is included in this Agreement. Brokers shall have no duty to inspect the Property or to advise Buyer or Seller on any matter relating to the Property which could have been revealed through a survey, appraisal, title search, Official Georgia Wood Infestation Report, utility bill review, septic system inspection, well water test, tests for radon, asbestos, mold, methamphetamine, and lead-based paint; moisture test of stucco or synthetic stucco, inspection of the Property by a professional, construction expert, structural engineer or environmental engineer; review of this Agreement and transaction by an attorney, financial planner, mortgage consultant or tax consultant; and consulting appropriate governmental officials to determine, among other things and without limitation, the zoning of Property, the propensity of the Property to flood, flood zone certifications, whether any condemnation action is pending or has been filed or other nearby governmental improvements are planned. Buyer and Seller acknowledge that Broker does not perform or have expertise in any of the above tests, inspections, and reviews or in any of the matters handled by the professionals referenced above. Buyer and Seller should seek independent expert advice regarding any matter of concern to them relative to the Property and this Agreement. Buyer and Seller acknowledge that Broker shall not be responsible to monitor, supervise, or inspect any construction or repairs to Property and such tasks clearly fall outside the scope of real estate brokerage services. If Broker has written any special stipulations herein, the party for whom such special stipulations were written: a) confirms that each such stipulation reflects the party's complete understanding as to the substance and form of the special stipulations; b) hereby adopts each special stipulation as the original work of the party; and c) hereby agrees to indemnify and hold Broker who prepared the stipulation harmless from any and all claims, causes of action, suits, and damages arising out of or relating to such special stipulation. Buyer acknowledges that when and if Broker answers a question of Buyer or otherwise describes some aspect of the Property or the transaction, Broker is doing so based upon information provided by Seller rather than the independent knowledge of Broker (unless Broker makes an independent written disclosure to the contrary).

13. **Time Limit of Offer.** The Time Limit of the Offer shall be the date and time referenced herein when the Offer expires unless prior to that date and time both of the following have occurred: (a) the Offer has been accepted by the party to whom the Offer was made; and (b) notice of acceptance of the Offer has been delivered to the party who made the Offer.

C. **OTHER TERMS AND CONDITIONS**

1. **Notices.**
    a. **Generally:** All notices given hereunder shall be in writing, legible and signed by the party giving the notice. In the event of a dispute regarding notice, the burden shall be on the party giving notice to prove delivery. The requirements of this notice paragraph shall apply even prior to this Agreement becoming binding. Notices shall only be delivered: (1) in person; (2) by courier, overnight delivery service or by certified or registered U.S. mail (hereinafter collectively "Delivery Service"); or (3) by e-mail or facsimile. The person delivering or sending the written notice signed by a party may be someone other than that party.
    b. **Delivery of Notice:** A notice to a party shall be deemed to have been delivered and received upon the earliest of the following to occur: (1) the actual receipt of the written notice by a party; (2) in the case of delivery by a Delivery Service, when the written notice is delivered to an address of a party set forth herein (or subsequently provided by the party following the notice provisions herein), provided that a record of the delivery is created; (3) in the case of delivery electronically, on the date and time the written notice is electronically sent to an e-mail address or facsimile number of a party herein (or subsequently provided by the party following the notice provisions herein) even if it is not opened by the recipient. Notice to a party shall not be effective unless the written notice is sent to an address, facsimile number or e-mail address of the party set forth herein (or subsequently provided by the party following the notice provisions herein).
    c. **When Broker Is Authorized to Accept Notice for Client:** Except where the Broker is acting in a dual agency capacity, the Broker and any affiliated licensee of the Broker representing a party in a client relationship shall be authorized agents of the party for the limited purpose of receiving notice and such notice to any of them shall for all purposes herein be deemed to be notice to the party. Notice to an authorized agent shall not be effective unless the written notice is sent to an address, facsimile number or e-mail address of the authorized agent set forth herein (or subsequently provided by the authorized agent following the notice provisions herein) even if it is not opened by the recipient. Except as provided for herein, the Broker's staff at a physical address set forth herein of the Broker or the Broker's affiliated licensees are authorized to receive notices delivered by a Delivery Service. The Broker, the Broker's staff and the affiliated licensees of the Broker shall not be authorized to receive notice on behalf of a party in any transaction in which a brokerage engagement has not been entered into with the party or in which the Broker is acting in a dual agency capacity. In the event the Broker is practicing designated agency, only the designated agent of a client shall be an authorized agent of the client for the purposes of receiving notice.

Copyright© 2022 by Georgia Association of REALTORS®, Inc.

2. **Destruction of Property Prior to Closing.** If the Property is destroyed or substantially destroyed prior to Closing, Seller shall give Buyer prompt notice thereof, which notice shall include Seller's reasonable estimate of: (1) the cost to restore and repair the damage; (2) the amount of insurance proceeds, if any, available for the same; and (3) whether the damage will be repaired prior to Closing. Upon notice to Seller, Buyer may terminate this Agreement within 7 days of receiving such notice from Seller. If Buyer does not terminate this Agreement, Buyer shall be deemed to have accepted Property with the damage and shall receive at Closing: (1) any insurance proceeds which have been paid to Seller but not yet spent to repair the damage; and (2) an assignment of all unpaid insurance proceeds on the claim.

3. **Representations and Warranties.**
   a. **Seller's Representations and Warranties:** As of the Binding Agreement Date and the Closing Date, Seller makes the representations and warranties to Buyer, if any, as indicated in Exhibit "D", if attached.
   b. **Buyer's Representations and Warranties:** As of the Binding Agreement Date and the Closing Date, Buyer represents and warrants to Seller that Buyer has the right, power and authority to enter into this Agreement and to consummate the transaction contemplated by the terms and conditions of this Agreement; and the persons executing this Agreement on behalf of Buyer have been duly and validly authorized by Buyer to execute and deliver this Agreement and shall have the right, power and authority to enter into this Agreement and bind Buyer.

4. **Default.**
   a. **Rights of Buyer or Seller:** A party defaulting under this Agreement shall be liable for the default. The non-defaulting party may pursue any lawful remedy against the defaulting party.
   b. **Rights of Broker:** In the event this Agreement is terminated or fails to close due to the default of a party hereto, the defaulting party shall pay as liquidated damages to every broker involved in this the commission the broker would have received had the transaction closed. For purposes of determining the amount of liquidated damages to be paid by the defaulting party, all written agreements establishing the amount of commission to be paid to any broker involved in this transaction are incorporated herein by reference. The liquidated damages referenced above are a reasonable pre-estimate of the Broker(s) actual damages and are not a penalty.
   c. **Attorney's Fees:** In any litigation or arbitration arising out of this Agreement, including but not limited to breach of contract claims between Buyer and Seller and commission claims brought by a broker, the non-prevailing party shall be liable to the prevailing party for its reasonable attorney's fees and expenses.

5. **Other Provisions.**
   a. **Condemnation:** Seller shall: (1) immediately notify Buyer if the Property becomes subject to a condemnation proceeding; and (2) provide Buyer with the details of the same. Upon receipt of such notice, Buyer shall have the right, but not the obligation for 7 days thereafter, to terminate this Agreement upon notice to Seller in which event Buyer shall be entitled to a refund of all earnest money and other monies paid by Buyer toward the Property without deduction or penalty. If Buyer does not terminate the Agreement within this time frame, Buyer agrees to accept the Property less any portion taken by the condemnation and if Buyer closes, Buyer shall be entitled to receive any condemnation award or negotiated payment for all or a portion of the Property transferred or conveyed in lieu of condemnation.
   b. **Duty to Cooperate:** All parties agree to do all things reasonably necessary to timely and in good faith fulfill the terms of this Agreement. Buyer and Seller shall execute and deliver such certifications, affidavits, and statements required by law or reasonably requested by the closing attorney, mortgage lender and/or the title insurance company to meet their respective requirements.
   c. **Electronic Signatures:** For all purposes herein, an electronic or facsimile signature shall be deemed the same as an original signature; provided, however, that all parties agree to promptly re-execute a conformed copy of this Agreement with original signatures if requested to do so by, the buyer's mortgage lender or the other party.
   d. **Entire Agreement, Modification and Assignment:** This Agreement constitutes the sole and entire agreement between all of the parties, supersedes all of their prior written and verbal agreements and shall be binding upon the parties and their successors, heirs and permitted assigns. No representation, promise or inducement not included in this Agreement shall be binding upon any party hereto. This Agreement may not be amended or waived except upon the written agreement of Buyer and Seller. Any agreement to terminate this Agreement or any other subsequent agreement of the parties relating to the Property must be in writing and signed by the parties. This Agreement may not be assigned by Buyer except with the written approval of Seller. Any assignee shall fulfill all the terms and conditions of this Agreement.
   e. **Extension of Deadlines:** No time deadline under this Agreement shall be extended by virtue of it falling on a Saturday, Sunday or federal holiday except for the date of closing.
   f. **GAR Forms:** The Georgia Association of REALTORS®, Inc. ("GAR") issues certain standard real estate forms. These GAR forms are frequently provided to the parties in real estate transactions. No party is required to use any GAR form. Since these forms are generic and written with the interests of multiple parties in mind, they may need to be modified to meet the specific needs of the parties using them. If any party has any questions about his or her rights and obligations under any GAR form, he or she should consult an attorney. Provisions in the GAR Forms are subject to differing interpretations by our courts other than what the parties may have intended. At times, our courts may strike down or not enforce provisions in our GAR Forms, as written. No representation is made that the GAR Forms will protect the interests of any particular party or will be fit for any specific purpose. The parties hereto agree that the GAR forms may only be used in accordance with the licensing agreement of GAR. While GAR forms may be modified by the parties, no GAR form may be reproduced with sections removed, altered or modified unless the changes are visible on the form itself or in a stipulation, addendum, exhibit or amendment thereto.
   g. **Governing Law and Interpretation:** This Agreement may be signed in multiple counterparts each of which shall be deemed to be an original and shall be interpreted in accordance with the laws of Georgia. No provision herein, by virtue of the party who drafted it, shall be interpreted less favorably against one party than another. All references to time shall mean the time in Georgia. If any provision herein is held to be unenforceable, it shall be severed from this Agreement while the remainder of the Agreement shall, to the fullest extent permitted by law, continue to have full force and effect as a binding contract.

**h. No Authority to Bind:** No Broker or affiliated licensee of Broker, by virtue of this status, shall have any authority to bind any party hereto to any contract, provisions therein, amendments thereto, termination thereof or to notices signed by Broker but not the party. However, if authorized in this Agreement, Broker shall have the right to accept notices on behalf of a party (but not send notices from this Broker on behalf of a party unless they are signed by the party). Additionally, any Broker or real estate licensee involved in this transaction may perform the ministerial act of filling in the Binding Agreement Date. In the event of a dispute over the Binding Agreement Date, it shall be resolved by a court arbitrator having jurisdiction over the dispute, by the written agreement of the Buyer and Seller, or by the Holder but only in making a reasonable interpretation of the Agreement in disbursing earnest money.

**i. Notice of Binding Agreement Date:** The Binding Agreement Date shall be the date when a party to this transaction who has accepted an offer or counteroffer to buy or sell real property delivers notice of that acceptance to the party who made the offer or counteroffer in accordance with the Notices section of the Agreement. Notice of the Binding Agreement Date may be delivered by either party (or the Broker working with or representing such party) to the other party. If notice of accurate Binding Agreement Date is delivered, the party receiving notice shall sign the same and immediately return it to the other party. Notwithstanding any other provision to the contrary contained in this Agreement, it is the express intent of this section that (1) a broker or licensee involved in the real estate transaction may perform the ministerial task of filling in the Binding Agreement Date and (2) sending a fully signed purchase and sale agreement with a specific Binding Agreement Date included, that one of the parties has agreed to, constitutes notice of the Binding Agreement Date to the other party.

**j. Objection to Binding Agreement Date:** If the Buyer or Seller objects to the date entered as the Binding Agreement Date, then within one (1) day from receiving notice of Binding Agreement Date, the party objecting shall send notice of the objection to the other party. The objection shall be resolved by the written amendment between the Buyer and Seller by executing a binding agreement date confirmation (F733). The absence of an agreement on the Binding Agreement Date shall not render this Agreement unenforceable. The failure of a party to timely object will result in the parties accepting the Binding Agreement Date as entered.

**k. Repairs:** All agreed upon repairs and replacements shall be performed in a good and workmanlike manner prior to closing.

**l. Rules for Interpreting This Agreement:** In the event of internal conflicts or inconsistencies in this Agreement, the following rules for how those conflicts or inconsistencies shall be resolved will apply:
(1) Handwritten changes shall control over pre-printed or typed provisions;
(2) Exhibits shall control over the main body of the Agreement;
(3) Special Stipulations shall control over both exhibits and the main body of the Agreement;

**m. Statute of Limitations:** All claims of any nature whatsoever against Broker(s) and/or their affiliated licensees, whether asserted in litigation or arbitration and sounding in breach of contract and/or tort, must be brought within two (2) years from the date any claim or cause of action arises. Such actions shall thereafter be time-barred.

**n. Survival of Agreement:** The following shall survive the closing of this Agreement: (1) the obligation of a party to pay a real estate commission; (2) any warranty of title; (3) all written representations of Seller in this Agreement regarding the Property or neighborhood in which the Property is located; (4) the section on condemnation; (5) the obligations of the parties regarding ad valorem real property taxes; and (6) any obligations which the parties herein agree shall survive the closing or may be performed or fulfilled after the Closing.

**o. Warranties Transfer:** Seller agrees to transfer to Buyer, at closing, subject to Buyer's acceptance thereof (and at Buyer's expense, if there is any cost associated with said transfer), Seller's interest in any existing manufacturer's warranties, service contracts, termite treatment and/or repair guarantee and/or other similar warranties which, by their terms, may be transferable to Buyer.

**p. Terminology:** As the context may require in this Agreement: (1) the singular shall mean the plural and vice versa; and (2) all pronouns shall mean and include the person, entity, firm, or corporation to which they relate. The letters "N.A." or "N/A", if used in this Agreement, shall mean "Not Applicable", except where the context would indicate otherwise.

**q. Time of Essence:** Time is of the essence of this Agreement.

6. **Definitions.**

   **a. Banking Day:** A "Banking Day" shall mean a day on which a bank is open to the public for carrying out substantially all of its banking functions. For purposes herein, a "Banking Day" shall mean Monday through Friday excluding federal holidays.

   **b. Binding Agreement Date:** The "Binding Agreement Date" shall be the date when a party to this transaction who has accepted an offer or counteroffer to buy or sell real property delivers notice of that acceptance to the party who made the offer or counteroffer in accordance with the Notices section of the Agreement.

   **c. Broker:** In this Agreement, the term "Broker" shall mean a licensed Georgia real estate broker or brokerage firm and its affiliated licensees unless the context would indicate otherwise.

   **d. Business Day:** A "Business Day" shall mean a day on which substantially all businesses are open for business. For all purposes herein, a "Business Day" shall mean Monday through Friday excluding federal holidays.

   **e. Day:** For the purposes of this Agreement, the term "Day" shall mean a full calendar day ending at 11:59 p.m., except as may be provided for elsewhere herein. For the purposes of counting days for determining deadlines, the specific date referenced as either the Binding Agreement Date or the date from which the deadline shall be counted will be day zero.

   **f. Material Relationship:** A material relationship shall mean any actually known personal, familial, social, or business relationship between the broker or the broker's affiliated licensees and any other party to this transaction which could impair the ability of the broker or affiliated licensees to exercise fair and independent judgment relative to their client.

7. **WARNING TO BUYERS AND SELLERS**: BEWARE OF CYBER-FRAUD. Fraudulent e-mails attempting to get the buyer and/or seller to wire money to criminal computer hackers are increasingly common in real estate transactions. Specifically, criminals are impersonating the online identity of the actual mortgage lender, closing attorney, real estate broker or other person or companies involved in the real estate transaction. In that role, the criminals send fake wiring instructions attempting to trick buyers and/or sellers into wiring them money related to the real estate transaction, including, for example, the buyer's earnest money, the cash needed for the buyer to close, and/or the seller's proceeds from the closing. These instructions, if followed, will result in the money being wired to the criminals. In many cases, the fraudulent email is believable because it is sent from what appears to be the email address/domain of the legitimate company or person responsible for sending the buyer or seller wiring instructions. The buyer and/or seller should verify wiring instructions sent by email by independently looking up and calling the telephone number of the company or person purporting to have sent them. Buyers and sellers should never call the telephone number provided with wiring instructions sent by email since they may end up receiving a fake verification from the criminals. Buyer and sellers should be on special alert for: 1) emails directing the buyer and/or seller to wire money to a bank or bank account in a state other than Georgia; and 2) emails from a person or company involved in the real estate transaction that are slightly different (often by one letter, number, or character) from the actual email address of the person or company.

8. **LIMIT ON BROKER'S LIABILITY.** BUYER AND SELLER ACKNOWLEDGE THAT BROKER(S):
   a. **SHALL, UNDER NO CIRCUMSTANCES, HAVE ANY LIABILITY GREATER THAN THE AMOUNT OF THE REAL ESTATE COMMISSION PAID HEREUNDER TO BROKER (EXCLUDING ANY COMMISSION AMOUNT PAID TO A COOPERATING REAL ESTATE BROKER, IF ANY) OR, IF NO REAL ESTATE COMMISSION IS PAID TO BROKER, THAN A SUM NOT TO EXCEED $100; AND**
   b. **NOTWITHSTANDING THE ABOVE, SHALL HAVE NO LIABILITY IN EXCESS OF $100 FOR ANY LOSS OF FUNDS AS THE RESULT OF WIRE OR CYBER FRAUD.**

9. **Exhibits and Addenda.** All exhibits and/or addenda attached hereto, listed below, or referenced herein are made a part of this Agreement.
   - ☐ Exhibit "A" Legal Description
   - ☐ Exhibit "B" Due Diligence Materials
   - ☐ Exhibit "C" Addition to Seller's Closing Documents
   - ☐ Exhibit "D" Seller's Warranties and Representations
   - ☐ Exhibit "E" Permitted Title Exceptions
   - ☐ Other _____.
   - ☐ Other _____.
   - ☐ Other _____.
   - ☐ Other _____.

**SPECIAL STIPULATIONS:** The following Special Stipulations are made a part of this Agreement.

☐ **Additional Special Stipulations (F246) are attached.**

Copyright© 2022 by Georgia Association of REALTORS®, Inc.

**By signing this Agreement, Buyer and Seller acknowledge that they have each read and understood this Agreement and agree to its terms.**

**Buyer Acceptance and Contact Information**

*Christopher Flournoy*
1 **Buyer's Signature**

 2 BIG LEGACY, LLC.                          01/20/2022
Print or Type Name                              Date

Buyer's Address for Receiving Notice

Buyer's Phone Number: ☐ Cell  ☐ Home  ☐ Work

Buyer's E-mail Address

2 **Buyer's Signature**

Print or Type Name               Date

Buyer's Address for Receiving Notice

Buyer's Phone Number: ☐ Cell  ☐ Home  ☐ Work

Buyer's E-mail Address

☐ Additional Signature Page (F267) is attached.

**Buyer's Broker/Affiliated Licensee Contact Information**

Buyer Brokerage Firm

**Broker/Affiliated Licensee Signature**    Date

Print or Type Name          GA Real Estate License #

Licensee's Phone Number     Fax Number

Licensee's E-mail Address

REALTOR® Membership

Broker's Address

Broker's Phone Number     Fax Number

MLS Office Code     Brokerage Firm License Number

**Seller Acceptance and Contact Information**

1 **Seller's Signature**

                                        01/20/2022
Print or Type Name                          Date

Seller's Address for Receiving Notice

Seller's Phone Number: ☐ Cell  ☐ Home  ☐ Work

Seller's E-mail Address

2 **Seller's Signature**

Print or Type Name               Date

Seller's Address for Receiving Notice

Seller's Phone Number: ☐ Cell  ☐ Home  ☐ Work

Seller's E-mail Address

☐ Additional Signature Page (F267) is attached.

**Seller's Broker/Affiliated Licensee Contact Information**

Seller Brokerage Firm

**Broker/Affiliated Licensee Signature**    Date

Print or Type Name          GA Real Estate License #

Licensee's Phone Number     Fax Number

Licensee's Email Address

REALTOR® Membership

Broker's Address

Broker's Phone Number     Fax Number

MLS Office Code     Brokerage Firm License Number

**Binding Agreement Date:** The Binding Agreement Date in this transaction is the date of _____01/20/2022_____ and has been filled in by _____.

Copyright© 2022 by Georgia Association of REALTORS®, Inc.          CF04, Commercial Purchase and Sale Agreement, Page 9 of 9, 01/01/22

# AMENDMENT TO AGREEMENT
## AMENDMENT # A
Date: MAY 19, 2022



**2022 Printing**

**Whereas**, the undersigned parties have entered into a certain Agreement between 2 BIG LEGACY, LLC
_____ ("Buyer") and ALVAREZ INVESTEMENT GROUP LLC("Seller"),
with a Binding Agreement Date of 01/20/2022 _____ for the purchase and sale of real property located at:
3751 MARTIN LUTHER KING JR DRIVE , ATLANTA , Georgia 30331 ; and

**Whereas**, the undersigned parties desire to amend the aforementioned Agreement, it being to the mutual benefit of all parties to do so;

**Now therefore**, for and in consideration of the sum of Ten Dollars ($10.00) and other valuable considerations paid by each to the other, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree to modify and amend the aforementioned Agreement as follows: [Note: The following language is furnished by the parties and is particular to this transaction.]

ALL PARTIES ACKNOWLEDGE AND AGREE CLOSING WILL BE EXTENDED TO ON
OR BEFORE JUNE 1, 2022.

☐ **Additional pages (F801) are attached.**

It is agreed by the parties hereto that all of the other terms and conditions of the aforementioned Agreement shall remain in full force and effect other than as modified herein. Upon execution by all parties, this Amendment shall be attached to and form a part of said Agreement.

**By signing this Amendment, Buyer and Seller acknowledge that they have each read and understood this Amendment and agree to its terms.**

_Christopher Flournoy_
**1 Buyer's Signature**                                    **1 Seller's Signature**

_____                    _____
**2 Buyer's Signature**                                    **2 Seller's Signature**

☐ **Additional Signature Page (F267) is attached.**        ☐ **Additional Signature Page (F267) is attached.**

_____                    _____
**Buyer Brokerage Firm**                                   **Seller Brokerage Firm**

_____                    _____
**Broker/Affiliated Licensee Signature**                   **Broker/Affiliated Licensee Signature**

_____                    _____
**REALTOR® Membership**                                    **REALTOR® Membership**

**Acceptance Date.** The above Amendment is hereby accepted, MAY 19, 2022 o'clock 11 AM .m. on the date of 05/19/2022 , ("Acceptance Date"). This Amendment will become binding upon the parties when notice of the acceptance of the Amendment has been received by offeror. The offeror shall promptly notify offeree when acceptance has been received.

THIS FORM IS COPYRIGHTED AND MAY ONLY BE USED IN REAL ESTATE TRANSACTIONS IN WHICH Debra Hammond Hull IS INVOLVED AS A REAL ESTATE LICENSEE. UNAUTHORIZED USE OF THE FORM MAY RESULT IN LEGAL SANCTIONS BEING BROUGHT AGAINST THE USER AND SHOULD BE REPORTED TO THE GEORGIA ASSOCIATION OF REALTORS® AT (770) 451-1831.
Copyright© 2022 by Georgia Association of REALTORS®, Inc.                    F701, Amendment to Agreement, 01/01/22

**Exhibit C**
**Declaration of Debbie Farrell**

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| **In re:** | **Chapter 7** |
| **STANDING OVATION RENOVATIONS, LLC,** | **Case No. 22-52645-WLH** |
| **Debtor.** | |

**DECLARATION OF DEBBIE FARRELL**

I, Debbie Farrell, make the following declaration:

1. I am over the age of 18 and I am a resident of the State of Georgia, I suffer no legal disabilities, and if called as a witness, I could testify completely to the facts set forth herein.

2. I submit this Declaration in support of the Debtor's Emergency Motion to Dismiss Bankruptcy Case (the "**Motion**"),[1] and for all other purposes allowed by law.

3. I am the broker for the Purchaser's Lender, Legacy Lending, LLC. The Lender will have a representative present to testify at Judge Hagenau's May 26, 2022 hearing on the Motion.

1. The purchase price for the Property is $17 million. The Purchaser has already funded $5 million, which is escrowed in the Closing Attorney's IOLTA account. The remaining $12 million has been funded by the Lender and is in the process of being wired to the Closing Attorney's IOLTA account.

4. If the sale of the Property is not closed by Thursday, May 26, 2022, the Lender may recall the Financing and the closing will be canceled.

5. There are no other impediments to closing the sale of the Property, and it can close promptly upon Court suspension or dismissal of this bankruptcy case.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: May 25, 2022

_____

**Debbie Farrell**
**BROKER**

---

[1] All undefined, capitalized terms contained herein shall have the meaning ascribed to them in the Motion.

▼ **HELLOSIGN**                                                                    Audit Trail

| | |
|---|---|
| **TITLE** | Debbie Farrell Declaraiont.pdf |
| **FILE NAME** | Debbie%20Farrell%20Declaraiont.pdf |
| **DOCUMENT ID** | 08625e933084bc7381583e2c4c581b617cd27999 |
| **AUDIT TRAIL DATE FORMAT** | MM / DD / YYYY |
| **STATUS** | ◦ Signed |

**This document was requested from app.clio.com**

## Document History

| | | |
|---|---|---|
| ⟳ **SENT** | **05 / 25 / 2022** 14:33:39 UTC | Sent for signature to Standing Ovation Rennovations, LLC (debbie@fundingsolutionsfinancial.com) from swenger@randllaw.com IP: 24.99.79.244 |
| 👁 **VIEWED** | **05 / 25 / 2022** 14:34:47 UTC | Viewed by Standing Ovation Rennovations, LLC (debbie@fundingsolutionsfinancial.com) IP: 76.20.199.114 |
| ✍ **SIGNED** | **05 / 25 / 2022** 14:35:14 UTC | Signed by Standing Ovation Rennovations, LLC (debbie@fundingsolutionsfinancial.com) IP: 76.20.199.114 |
| ⊘ **COMPLETED** | **05 / 25 / 2022** 14:35:14 UTC | The document has been completed. |

**Exhibit D**
**Declaration of Oluremi Oshikanlu**

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| In re: | Chapter 7 |
| **STANDING OVATION RENOVATIONS, LLC,** | Case No. 22-52645-WLH |
| Debtor. | |

## DECLARATION OF OLUREMI OSHIKANLU

I, Oluremi Oshikanlu, make the following declaration:

1. I am over the age of 18 and I am a resident of the State of New York, I suffer no legal disabilities, and if called as a witness, I could testify completely to the facts set forth herein.

2. I submit this Declaration in support of the Debtor's Emergency Motion to Suspend or Dismiss Bankruptcy Case (the "**Motion**"),[1] and for all other purposes allowed by law.

3. I am the President of Edgar Nelson, Inc. with sole authority to make all decisions therefor.

4. Edgar Nelson, Inc. approves the sales price of $17 million for the Debtor's real Property. Said price will be sufficient to pay Edgar Nelson, Inc.'s claim in full.

5. I hereby give my consent to the sale of the Property as well as the suspension or dismissal of the Debtor's bankruptcy case, as requested in the Motion.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

_____
Oluremi Oshikanlu

---

[1] All undefined, capitalized terms contained herein shall have the meaning ascribed to them in the Motion.

# ▽ HELLOSIGN

Audit Trail

| | |
|---|---|
| **TITLE** | Edgar Nelson Declaration.pdf |
| **FILE NAME** | Edgar%20Nelson%20Declaration.pdf |
| **DOCUMENT ID** | ed296b94036b4d901a6821e33a92079f0d47a025 |
| **AUDIT TRAIL DATE FORMAT** | MM / DD / YYYY |
| **STATUS** | ● Signed |

This document was requested from app.clio.com

## Document History

| | | | |
|---|---|---|---|
| ↱ **SENT** | **05 / 24 / 2022** 19:49:24 UTC | Sent for signature to Standing Ovation Rennovations, LLC (edgarnelsoninc@gmail.com) from swenger@randllaw.com IP: 24.99.79.244 |
| 👁 **VIEWED** | **05 / 24 / 2022** 19:49:40 UTC | Viewed by Standing Ovation Rennovations, LLC (edgarnelsoninc@gmail.com) IP: 107.122.157.116 |
| ⤼ **SIGNED** | **05 / 24 / 2022** 19:51:19 UTC | Signed by Standing Ovation Rennovations, LLC (edgarnelsoninc@gmail.com) IP: 107.122.157.116 |
| ⊘ **COMPLETED** | **05 / 24 / 2022** 19:51:19 UTC | The document has been completed. |

Powered by ▽ HELLOSIGN

**Exhibit E**
**Declaration of Dexter C. Hull**

## UNITED STATES BANKRUPTCY COURT
### NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | |
|---|---|
| In re: | Chapter 7 |
| **STANDING OVATION RENOVATIONS, LLC,** | Case No. 22-52645-WLH |
| Debtor. | |

## DECLARATION OF DEXTER HULL

I, Dexter Hull, make the following declaration:

1. I am over the age of 18 and I am a resident of the State of Georgia, I suffer no legal disabilities, and if called as a witness, I could testify completely to the facts set forth herein. Indeed, I will appear as a witness at Judge Hagenau's May 26, 2022 hearing on the Motion (defined below).

2. I submit this Declaration in support of the Debtor's Emergency Motion to Dismiss Bankruptcy Case (the "**Motion**"),[1] and for all other purposes allowed by law. I will appear as a witness at Judge Hagenau's May 26, 2022 hearing on the Motion.

3. I am the managing member of the Debtor, Standing Ovation Renovations, LLC.

4. Funds from nondebtor entities have paid off all claims in this case, save for those of NuBridge and Edgar Nelson, Inc.

5. Consummation of the agreed-upon sale of the Property will allow the Debtor to pay the remaining claims in full.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

*Dexter Hull*
_____
**Dexter Hull**

---

[1] All undefined, capitalized terms contained herein shall have the meaning ascribed to them in the Motion.

                                                              Audit Trail

---

| | |
|---|---|
| **TITLE** | Declaration of Dexter Hull.pdf |
| **FILE NAME** | Declaration%20of%20Dexter%20Hull.pdf |
| **DOCUMENT ID** | ede4893845ff4eb87ce2af98c3001e08f10e3139 |
| **AUDIT TRAIL DATE FORMAT** | MM / DD / YYYY |
| **STATUS** | ● Signed |

---

**This document was requested from app.clio.com**

---

## Document History

| | | |
|---|---|---|
| **SENT** | **05 / 25 / 2022**<br>14:15:04 UTC | Sent for signature to Standing Ovation Rennovations, LLC (dexter2bros@gmail.com) from swenger@randllaw.com<br>IP: 24.99.79.244 |
| **VIEWED** | **05 / 25 / 2022**<br>14:33:28 UTC | Viewed by Standing Ovation Rennovations, LLC (dexter2bros@gmail.com)<br>IP: 172.58.3.42 |
| **SIGNED** | **05 / 25 / 2022**<br>14:33:59 UTC | Signed by Standing Ovation Rennovations, LLC (dexter2bros@gmail.com)<br>IP: 172.58.3.42 |
| **COMPLETED** | **05 / 25 / 2022**<br>14:33:59 UTC | The document has been completed. |

---